UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ANGELA LANCASTER, and PATRICIA TILTON,<br><br>Plaintiffs,<br><br>v.<br><br>BLOOMINGTON-NORMAL PUBLIC TRANSPORTATION SYSTEM, an Illinois Local Governmental Entity, JEFFREY LOGAN, in His Individual Capacity, and DAVID ANDERSON, in His Individual Capacity,<br><br>Defendants. | Case No. 12-1029<br><br>**JURY DEMAND** |

**COMPLAINT**

Now Comes, the plaintiffs, Angela Lancaster and Patricia Tilton, by Richard L. Steagall, their attorney, and complaining of Defendants Bloomington-Normal Public Transportation System, Jeffrey Logan, and Dave Anderson, and for their complaint states:

I.
**Jurisdiction & Venue**

1.  Jurisdiction to hear plaintiff's claims exists under, Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-1 et seq, and the Civil Rights Act of 1871, 42 U.S.C. § 1983 is founded under 28 U.S.C. §§ 1337 & 1343 (a)(4). Supplemental jurisdiction to hear

plaintiff's claims under Section 1-102 (A) and 2-102 (A)of the Illinois Human Rights Act, 775 ILCS 5/1-102 (A); 2-102 (A)(2008) exists under 28 U.S.C. § 1367 (a).

2. The claim arose in the City of Bloomington, McLean County, Illinois. Defendant Bloomington-Normal Public Transportation System is a local governmental entity that is responsible for providing public transportation to the residents of the cities of Bloomington and Normal, Illinois, McLean County, Illinois. Venue exists in this court under 28 U.S.C. § 1391 (a). The case is assigned to the Peoria Division of this court under Local Rule 40:1.

3. The conduct complained of here arose in the period from a time before **September 23, 2010** through **the present** in the City of Bloomington, County of McLean, and State of Illinois.

## II.
## The Parties

4. Plaintiff, Angela Lancaster, is a 47 year old female employed by the Bloomington-Normal Public Transportation System.  She was the designated Equal Employment Opportunity (EEO) representative.

5. Plaintiff, Patricia Tilton, is a 58 year old female employed as an administrative assistant with the Bloomington-Normal Public Transportation System for the past eight years.

6. Defendant, Bloomington-Normal Public Transportation System (BNPTS), is a local governmental entity organized and existing under the laws of the State of Illinois which was at all times material acting under color of state law.

7.     Defendant, Jeffrey Logan, at all material times, was the General Manager and a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his employment and under color of state law.

8.     Defendant, Dave Anderson, at all times material, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law.

## III.
## The Incidents

8.     Angela Lancaster, Patricia Tilton, and Melanie Overend are employees for the Bloomington-Normal Public Transportation System.

9.     The General Manager for BNPTS was Jeff Logan.

10.    Jeff Logan continuously made lewd sexual comments and other harassing behavior towards the female employees at BNPTS.

11.    On September 23, 2010 at a staff meeting attended by Jeff Logan, Gary Gwin, Roy Rickert, and Melanie Overend.  During the meeting, Logan asked Overend to cover her eyes and then proceeded to make an obscene sexual gesture to Gwin.

12.    On September 27, 2010,  BNPTS personnel Logan, Gary Gwin, and Melanie Overend attended a meeting at Illinois State University with the ISU RedbirdRide representatives.  Logan drove to the meeting with Gwin and Overend in the same car. During the conversation in the car on the way back to the BNPTS office, Logan referenced woman as 'skirts' several times.   When he saw an attractive women getting something out of her car, Logan state "Oh hello, there".

13. On October 15, 2010, Overend told Logan she was expecting a child and she needed to be careful lifting things during her pregnancy. Logan interrupted Overend, and stated he knew that she was expecting. When Overend asked how, Logan responded, "I have my ways". Later Logan asked about Overend's children. Overend responded that she had two sons, and Logan stated "your husband must shoot boys".

14. In October 2010, General Manager, Jeff Logan repeatedly rubbed the arms of Angela Lancaster. This made Lancaster feel very uncomfortable. She asked to be allowed to leave the meeting, and did so.

15. Another time in October 2010, Logan touched the lower back of Lancaster while she was using the copy machine.

16. On November 14, 2010, Melanie Overend sent a letter to the Board of Trustees of the BNPTS. The letter reported the inapproapriate and harassing sexual conduct of Jeff Logan towards her.

17. On November 20, 2010, Patricia Tilton wrote a letter to the Board of Trustees of the BNPTS. The letter reported the inappropriate and harassing conduct of Jeff Logan, and this conduct has made all the female employees at the BNPTS afraid to be around him alone for any length of period of time.

18. The letter from Tilton to the board outlined specific sexual comments made by Logan. The following was said by Logan:

    A. "Do you always dress like that for work?"

   B.  "It must have been that time of the month for her"

   C.  "Your husband only shoots boys"

   D.  Referring to ISU female students as "skirts"

   E.  Stating "hello mama" when seeing a ISU female student

19. On November 22, 2010, Lancaster filed an official grievance and complaints. The grievance/complaint outlined violations of BNPTS policies, and included the following:

   A.  Logan used favoritism in filling job vacancies instead of posting the vacancy so others could bid on the job. Logan did not post a job vacancy and announced his male friend Gary Gwin as Operations Manager and gave Gwin authority to purchases over the $250 limit.

   B.  Logan placed his hand on Lancaster and rubbed up and down her arms. The Chairman of the Board of Trustees of BNPTS witnessed this incident.

   C.  On October 13, 2010, while Lancaster was making copies, Logan placed his hand on Lancaster's lower back.

   D.  Gwin made comments to Joanna Wrice about sexual actions while Overend and Lancaster were present.

20. Lancaster was reporting these incidents for the harassment perpetrated by Logan towards her, as well as the other incidents reported to her by other female employees to managerial agents of BNPTS.

21. On December 21, 2010 General Manager, Jeffrey Logan, and the BNPTS Board of Trustees placed Angela Lancaster on administrative leave.

22. On December 21, 2010 General Manager, Jeffrey Logan, and the BNPTS

Board of Trustees placed Patricia Tilton on administrative leave with pay until January 4, 2010.

23. On February 8, 2011 Jeff Logan submitted his resignation and it was accepted by the BNPTS Board of Trustees.

24. Lancaster and Tilton filed Charges of Discrimination with the Illinois Department of Human Rights. Throughout the pendency of the charges, David Anderson their supervisor asked them on a regular basis during the work week to drop the charges. Then, when a small settlement offer was made, Anderson asked them to take the settlement. The repeated reference to the Charges and request to drop them or accept the small settlement caused significant mental distress to Lancaster and Tilton and altered the terms and conditions of their employment.

## IV.
## Plaintiff's Claims

**A.   Federal Statutes**

25. At all times material here there was in force and effect in the United States a certain statute known as Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq. The relevant portions of that statute are set forth below:

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq

§ 2000e-2. Unlawful employment practices

(a) Employer practices

It shall be an unlawful employment practice for an employer-

(1) to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. ....

§ 2000e-3. Other unlawful employment practices

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

§ 2000e-5. Enforcement provisions

(b) Charges by persons aggrieved or member of Commission of unlawful employment practices by employers, etc...

(1) A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, ...

(f) Civil action by Commission, Attorney General, or person aggrieved;

preconditions; ...

(1) ... the Commission ... ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice

(k) Attorney's fee; liability of Commission and United States for costs
In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the

Commission and the United States shall be liable for costs the same as a private person.

26.   At all times relevant here, there was in full force in the United States, certain provision of the Constitution known as the Equal Protection Clause of the Fourteenth Amendment and statute known as the Civil Rights Act of 1871, 42 U.S.C. § 1983, which portions relevant here are set forth below:

Constitution of the United States, Amendment XIV. Equal Protection
... nor shall any State deprive any person of life, liberty, or property, without due process of law nor deny any person equal protection of the laws.
Civil Rights Act of 1871, 42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia subjects, or causes to be subjected, a citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileged or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

**B. State Statutes**

26.   At all times material, there was in full force and effect certain statutes

known as the Illinois Human Rights Act, 775 ILCS 5/1-101 et seq (2008). The relevant portions are set forth below:

> Illinois Human Rights Act, 775 ILCS 5/101 et seq (2008)
> § 1-102. Declaration of Policy.
> It is the public policy of this State:
>
> (A) Freedom from Unlawful Discrimination. To secure for all individuals within Illinois the freedom from discrimination against any individual because of his or her race, color, religion, sex, national origin, ancestry, age, order of protection status, marital status, physical or mental disability, military status, sexual orientation, or unfavorable discharge from military service in connection with employment, real estate transactions, access to financial credit, and the availability of public accommodations.
>
> (B) Freedom from Sexual Harassment-Employment and Higher Education. To prevent sexual harassment in employment and sexual harassment in higher education.
>
> § 2-102. Civil Rights Violations--Employment
>
> It is a civil rights violation:
>
> (A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination or citizenship status.....
>
> 5/1-103. General Definitions
>
> § 1-103. General Definitions. When used in this Act, unless the context requires otherwise, the term:
>
> (D) Civil Rights Violation. "Civil rights violation" includes and shall be limited to only those specific acts set forth in Sections 2-102, 2-103, 2-105, 3-102, 3-102.1, 3-103, 3-104, 3-104.1, 3-105, 3-105.1, 4-102, 4-103, 5-102, 5A-102, 6-101, and 6-102 of this Act.
>
> (L) Person. "Person" includes one or more individuals, partnerships, associations

or organizations, labor organizations, labor unions, joint apprenticeship committees, or union labor associations, corporations, the State of Illinois and its instrumentalities, political subdivisions, units of local government, legal representatives, trustees in bankruptcy or receivers.

(O) Sex. "Sex" means the status of being male or female.

§ 6-101. Additional Civil Rights Violations

It is a civil rights violation for a person, or for two or more persons to conspire, to:

(A) Retaliation. Retaliate against a person because he or she has opposed that which he or she reasonably and in good faith believes to be unlawful discrimination, sexual harassment in employment or sexual harassment in higher education, discrimination based on citizenship status in employment, or because he or she has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this Act;

7A-102. Procedures.

(A) Charge

(1) Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director.

(2) The charge shall be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation. ....

(D) Report

(1) Each charge shall be the subject of a report to the Director. The report shall be a confidential document subject to review by the Director, authorized Department employees, the parties, and, where indicated by this Act, members of the Commission or their designated hearing officers.

(2) Upon review of the report, the Director shall determine whether there is substantial evidence that the alleged civil rights violation has been committed. ....

(3) If the Director determines that there is no substantial evidence, the charge shall be dismissed by order of the Director and the Director shall give the complainant notice of his or her right to seek review of the dismissal order before the Commission or commence a civil action in the appropriate circuit court. If the complainant chooses to have the Human Rights Commission review the dismissal order, he or she shall file a request for review with the Commission within 90 days after receipt of the Director's notice. If the complainant chooses to file a request for review with the Commission, he or she may not later commence a civil action in a circuit court. If the complainant chooses to commence a civil action in a circuit court, he or she must do so within 90 days after receipt of the Director's notice.

(4) If the Director determines that there is substantial evidence, he or she shall notify the complainant and respondent of that determination. The Director shall also notify the parties that the complainant has the right to either commence a civil action in the appropriate circuit court or request that the Department of Human Rights file a complaint with the Human Rights Commission on his or her behalf. Any such complaint shall be filed within 90 days after receipt of the Director's notice. If the complainant chooses to have the Department file a complaint with the Human Rights Commission on his or her
behalf, the complainant must, within 30 days after receipt of the Director's notice, request in writing that the Department file the complaint. If the complainant timely requests that the Department file the complaint, the Department shall file the complaint on his or her behalf. If the complainant fails to timely request that the Department file the complaint, the complainant may file his or her complaint with the Commission or commence a civil action in the appropriate circuit court. If the complainant files a complaint with the Human Rights Commission, the complainant shall give notice to the Department of the filing of the complaint with the Human Rights Commission. ....

(G) Time Limit

(1) When a charge of a civil rights violation has been properly filed, the Department,,within 365 days thereof or within any extension of that period agreed to in writing by all parties, shall issue its report as required by subparagraph (D). Any such report shall be duly served upon both the complainant and the respondent.

(2) If the Department has not issued its report within 365 days after the charge is filed, or any such longer period agreed to in writing by all the parties, the complainant shall have 90 days to either file his or her own complaint with the Human Rights Commission or commence a civil action in the appropriate circuit

court. ...

(4) The Department shall stay any administrative proceedings under this Section after the filing of a civil action by or on behalf of the aggrieved party under any federal or State law seeking relief with respect to the alleged civil rights violation.

§ 10-102. Court Actions

(A) Circuit Court Actions

(1) An aggrieved party may commence a civil action in an appropriate Circuit Court not later than 2 years after the occurrence or the termination of an alleged civil rights violation or the breach of a conciliation or settlement agreement entered into under this Act, whichever occurs last, to obtain appropriate relief with respect to the alleged civil rights violation or breach....

**C.      Federal & State Claims**

27.     Bloomington-Normal Public Transportation System and Jeff Logan, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law, as specifically allege in Part III ¶4-23, engaged in intentional sex harassment, creating a hostile work environment for Angela Lancaster in violation of Section 6-101 of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964.   775 ILCS 5/6-101 (A); 42 U.S.C. § 2000e-1 et seq.

28.     Jeff Logan, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law, as specifically allege in Part III ¶4-23, intentionally deprived Angela Lancaster of her liberty and property contrary to her right to be free from sex discrimination by state actors guaranteed to her by the Fourteenth Amendment right to equal protection of the

laws. Defendant, Bloomington-Normal Public Transportation System, is joined as a defendant for the §1983 claim because of its obligation to pay any settlement or judgment by an employee acting in the scope of his employment under Section 9-102 of the Illinois Local Governmental Tort Immunity Act.

29.    The conduct of the Bloomington-Normal Transportation System and Jeff Logan, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law, in suspending Angela Lancaster was in retaliation for her right to report and seek remedy for sex discrimination that creates a hostile worn environment, specifically alleged in Part III ¶4 -23, in violation of Section 6-101 of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964. 775 ILCS 5/6-101 (A); 42 U.S.C. § 2000e-1 et seq.

30.    The conduct of the Bloomington-Normal Transportation System and Jeff Logan, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law, in suspending Patricia Tilton was in retaliation for her right to report and seek a remedy for sex discrimination, specifically alleged in Part III ¶4 -23, in violation of Section 6-101 of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964. 775 ILCS 5/6-101 (A); 42 U.S.C. § 2000e-1 et seq.

31.    The conduct of the Bloomington-Normal Transportation System and Dave Anderson, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law, in pressuring Angela

Lancaster to dismiss the charge of discrimination she filed and pressuring Lancaster to take a settlement after the filing of her charge of discrimination, as specifically alleged in Part III ¶24, altered the terms and conditions of her employment creating a hostile work environment and was retaliation in violation of Section 6-101 of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964. 775 ILCS 5/6-101 (A); 42 U.S.C. § 2000e-1 et seq.

32.     The conduct of the Bloomington-Normal Transportation System and Dave Anderson, a managerial agent of the Bloomington-Normal Public Transportation System, acting in the scope of his agency under color of state law, in pressuring Patricia Tilton to dismiss the charge of discrimination she filed and pressuring Tilton to take a settlement after the filing of her charge of discrimination, as specifically alleged in Part III ¶24, altered the terms and conditions of her employment creating a hostile work environment and was retaliation in violation of Section 6-101 of the Illinois Human Rights Act and Title VII of the Civil Rights Act of 1964. 775 ILCS 5/6-101 (A); 42 U.S.C. § 2000e-1 et seq.

## V.
## Relief Requested

33.     As a direct and proximate result of the sexual discrimination and retaliation, caused Angela Lancaster to endure mental distress and pain and suffering; Lancaster incurred medical expenses as a result of the discrimination and hostile work environment cause by the plaintiffs in the amount of Three Thousand Two Hundred Fifty Three Dollars ($3,253).

34.     As a direct and proximate result of the sexual discrimination and retaliation, caused Patricia Tilton to endure mental distress and pain and suffering; Tilton incurred medical expenses as a result of the discrimination and hostile work environment cause by the plaintiffs in the amount of One Thousand Eight Hundred Dollars ($1,800).

34.     The conduct of Bloomington-Normal Public Transportation System, acting through its managerial agents in the scope of their agency under the color of state law is such that for the purposes of punishment and by way of example, Angela Lancaster and Patricia Tilton are entitled to an award of punitive damages.

35.     Angela Lancaster and Patricia Tilton are entitled to an injunction against Defendants to refrain from further retaliation.

36.     Both Angela Lancaster and Patricia Tilton have in the past and will in the future incur attorney's fees and expenses in the prosecution of this action which they are entitled to recover as prevailing plaintiffs as a part of costs under Title VII and the Illinois Human Rights Act. 42 U.S.C. § 2000e-5 (k); 775 ILCS 5/8A-104 (G).

### VI.
### Satisfaction of Conditions for Bringing This Action

37.     Angela Lancaster filed a Charge of Discrimination with the Illinois Department of Human Rights which is simultaneously filed with the Equal Employment Opportunity Commission under an agency work sharing agreement on December 23, 2010. Ill. Dept. Human Rights Case No. 2011SF1777; EEOC No. 21B-2011-

00617. The December 23, 2010 filing of the Charge of Discrimination was within the 180 day time period for the filing of such charges after the December 21, 2010 employment action provided by the Illinois Human Rights Act and the 300 days provided for filing such charges in States which have an agency for filing discrimination charges. 775 ILCS 5/7A-102 (a)(1); 42 U.S.C. §2000e-5 (e)(1).

38.     The Illinois Department of Human Rights approved dismissal of the Charge of Discrimination after filing an August 1, 2011 request for a voluntary withdrawal of the Charge.

39.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue on October 26, 2011 and was received on October 31, 2011. This action is filed on January 23, 2012 which is within 90 days of Lancaster's receipt of the October 31, 2011 EEOC Notice of Right to Sue. A true copy of the Notice of Right to Sue is filed as Ex:1.

40.     Patricia Tilton  has satisfied the conditions for bringing this action imposed by Title VII. 42 U.S.C. § 2000e-5 (e)(1), (f)(1). Patricia Tilton filed a Charge of Discrimination with the Illinois Department of Human Rights which is simultaneously filed with the Equal Employment Opportunity Commission under an agency work sharing agreement on December 23, 2010. Ill. Dept. Human Rights Case No. 2011SF1778; EEOC No. 21B-2011-00618. The December 23, 2010 filing of the Charge of Discrimination was within the 180 day time period for the filing of such charges after the December 21, 2010 employment action provided by the Illinois Human Rights Act and the 300 days provided for filing such charges in States which have an agency for

filing discrimination charges. 775 ILCS 5/7A-102 (a)(1); 42 U.S.C. §2000e-5 (e)(1).

41.     The Illinois Department of Human Rights approved dismissal of the Charge of Discrimination after filing an August 1, 2011 request for a voluntary withdrawal of the Charge.

42.     The Equal Employment Opportunity Commission issued a Notice of Right to Sue on October 18, 2011 and was received on October 24, 2011. This action is filed on January 23, 2012 which is within 90 days of Tilton's receipt of the October 24, 2011 EEOC Notice of Right to Sue.  The 90th day was Sunday, January 22, 2011 and the next day was Monday, January 23, 2012, making the filing of the complaint timely. Fed.R.Civ.Proc.6(a)(1)(C). A true copy of the Notice of Right to Sue is filed as Ex:1.

43.     Patricia Tilton has satisfied the conditions for bringing this action imposed by Title VII. 42 U.S.C. § 2000e-5 (e)(1), (f)(1).

## VII.
## Prayer for Relief

**WHEREFORE**, Plaintiffs, ANGELA LANCASTER and PATRICIA TILTON, pray for judgment against the defendants, BLOOMINGTON-NORMAL PUBLIC TRANSPORTATION SYSTEM, JEFFREY LOGAN, and DAVID ANDERSON for compensatory damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($250,000), for punitive damages in the amount of TWO HUNDRED FIFTY THOUSAND DOLLARS ($100,000), and for an injunction to enjoin the Defendants from allowing additional retaliation plus her reasonable attorney's fees and expenses incurred in prosecuting this action as a part of costs under 42 U.S.C. § 2000e-5 (k) and

775 ILCS 5/8A-104 (G).1

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Respectfully submitted,

        <u>s/ Richard L. Steagall</u>
        RICHARD L. STEAGALL
        Attorney for the Plaintiffs

RICHARD L. STEAGALL
RYAN S. McCRACKEN
Nicoara & Steagall
416 Main Street, Suite 815
Commerce Building
Peoria, IL 61602-1115
Tel: 309-674-6085
Fax: 309-674-6032
Email: nicsteag@mtco.com